**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

CYWEE GROUP LTD.,

        Plaintiff,

v.

HUAWEI DEVICE CO. LTD.,
HUAWEI DEVICE (DONGGUAN)
CO. LTD., AND HUAWEI DEVICE
USA, INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:17-CV-00495-RWS-RSP

**JURY TRIAL DEMANDED**

## JOINT MOTION FOR ENTRY OF PROTECTIVE ORDER

Plaintiff CyWee Group Ltd. ("CyWee") and Defendants Huawei Device Co. Ltd.,

Huawei Device (Dongguan) Co. Ltd., and Huawei Device USA, Inc. (collectively "Huawei")

respectfully request that the Court enter a protective order governing confidentiality in this

action.  CyWee and Huawei have met and conferred in good faith and reached agreement on the

form of this order, with the exception of four remaining disputes.  Huawei's proposed order is

attached as Exhibit A, and CyWee's proposed order is attached as Exhibit B.

**1.      Source Code Printouts**

      **A.      Overview**

Section 10(k) relates to printouts of source code.  Huawei's proposal states that the

receiving party may not print more than 25 contiguous pages of source code or more than 500

pages total.  CyWee's proposal does not include this language, and instead allows for a printing

party to print limited portions of source code that appear reasonably necessary.

### B. CyWee's Proposal

The party seeking an additional restriction in a protective order must show good cause for its inclusion. *In re Deutsche Bank Trust Co. Ams*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). Huawei cannot satisfy its burden because its limitations are overly restrictive and unnecessary.[1] CyWee's proposal already places limitations on source code printouts, and explicitly states that the receiving party "may print paper copies of ***limited portions*** of source code that appear ***reasonably necessary*** for the preparation of court filings, pleadings, expert reports, infringement contentions, invalidity contentions, or other papers, or for deposition or trial." *E.g.*, Ex. B § 10(k) (emphasis added). If Huawei believes that CyWee has printed excessive code, it may seek relief from the Court, and it need not produce the printed code until its objection has been ruled on. *Id.*

The amount of source code on a given page can vary widely. For example, a page may consist primarily of comments. Source code can include lengthy function, procedure, and variable names. While such conventions include readability, they also increase the length of the code. Source code can call numerous functions or procedures, requiring that those functions or procedures be printed as well. As one court observed: "[T]he number of necessary pages of contiguous source code varies." *EPL Holdings, LLC v. Apple Inc.*, C-12-04306 JST JSC, 2013 WL 2181584, at *6 (N.D. Cal. May 20, 2013). That court determined that "placing a blanket limit on the number of source code pages is unhelpful." *Id.*

Huawei's proposed limit is particularly onerous in a case such as this, which involves

---

[1] Huawei's proposal is significantly more restrictive than the Court's sample protective order, which provides only that "[t]he receiving Party shall be permitted to make a ***reasonable number*** of printouts and photocopies of Source Code Material . . . ." (emphasis added).

math-intensive source code to calculate the orientation of a device for 11 asserted claims.  For

example, claim 1 of U.S. Patent No. 8,441,438 requires *inter alia*:

> receiving and **calculating said first and second signal sets** from the data
> transmitting unit, communicating with the six-axis motion sensor module to
> **calculate a resulting deviation comprising resultant angles** in said spatial pointer
> reference frame **by utilizing a comparison to compare the first signal set with the
> second signal set** . . . wherein the comparison utilized by the processing and
> transmitting module further comprises **an update program to obtain an updated
> state based on a previous state associated with said first signal set and a
> measured state associated with said second signal set**; wherein the measured
> state includes . . . and a predicted measurement obtained based on the first signal
> set without using any derivatives of the first signal set.

(emphases added). And claim 10 of the U.S. Patent No. of U.S. Patent No. 8,552,978 recites—in

addition to determining orientation—generating a "transformed output" associated with a

display. Generating a transformed output can require lengthy code, depending upon the

application. As CyWee's expert, Dr. Gans, testified in this case, applications for the technology

claimed in the patents-in-suit have "many uses, particularly for mobile cellular devices, such as

navigation, gaming, and augmented/virtual reality applications."  No. 10-3 ¶ 12.[2]

This Court recently rejected other defendants' request for a restrictive limit similar to that

sought by Huawei.  *See CyWee Group Ltc. v. Samsung Electronics Co., Ltd.*, No. 2:17-cv-00140-

RWS-RSP, Dkt. Nos. 36 (joint opposed motion), 39 (protective order). The patents-in-suit in that

case are identical to those at issue in the instant case.  In *CyWee v. Samsung*, the Court rejected

Samsung's request for a limitation of 15 pages of continuous code, and 75 pages maximum. The

Court rejected Samsung's proposal, and adopted the language CyWee proposes here, consistent

with the language of the Court's sample order. Compare Ex. B § 10(k) with *CyWee v. Samsung*,

Dkt. No. 39 § 10(p) (CyWee's proposal in both cases is substantively identical).

Huawei's cited caselaw is distinguishable. Unlike CyWee's reliance on the order in

---

[2] Huawei's limitation does not just affect discovery taken of it. Third parties may agree to be bound by the
protective order.

*CyWee v. Samsung*, none of Huawei's cases relate to the same patents at issue here. Like Samsung, Huawei relies on *Smartflash LLC v. Apple Inc.*, No. 6:13CV447, 2014 WL 10986995 (E.D. Tex. May 12, 2014). *See CyWee v. Samsung*, Dkt. No. 36 at 4 (Samsung's arguments), 3 (CyWee's response). The *Smartflash* court adopted the defendants' proposal, which allowed it to object if and only if the plaintiff printed more than ***40 pages of continuous code***. *Smartflash*, 2014 WL 10986995, at *2 (E.D. Tex. May 12, 2014). The *Smartflash* court did not limit the total amount of code that could be printed. *Id*. Huawei's limitations of 25 pages of contiguous code and 500 pages total are significantly more restrictive. Huawei also relies on *E–Contact Techs., LLC v. Apple, Inc.*, No. 1:11-CV-426 LED/KFG, 2012 WL 11924448 (E.D. Tex. June 19, 2012). Unlike the instant case, the plaintiff wanted to "print out the ***entirety of the source code*** that relates to the 'auto-complete' functionality of Defendants' accused products." *E-Contact*, 2012 WL 1192448, at *3 (emphasis added). CyWee's proposal is significantly narrower, and only allows for printing code that appears reasonably necessary for this case. In other cases cited by Huawei, the plaintiff ***agreed*** to the page limitations adopted by the court. *GeoTag, Inc. v. Frontier Commc'ns Corp.*, No. 2:10-CV-569, 2013 WL 12134192, at *4 (E.D. Tex. Jan. 8, 2013); *Seven Networks, LLC v. Google LLC*, No. 17-442, Docket No. 88.

Huawei argues that CyWee's infringement contentions rely on approximately 25 pages of Android source code. But that code illustrates infringement using a specific version of Android code. CyWee is entitled to discovery of all versions of related code used by Huawei for the accused products. Further, as Huawei is well aware, CyWee requested, in a production request letter dated February 23, 2018, code that "***accesses or uses*** such information, such as Apps code, whether written by Huawei or others." (emphasis added). Responsive code that may be included in an expert report far exceeds the code CyWee cited in its infringement contentions.

CyWee simply requests that this Court issue the same provision it issued in *CyWee v. Samsung*. This will help ensure consistency across cases before this Court. Specific page limits are not appropriate in this case. Huawei's limits are unnecessary, arbitrary, and likely to lead to unnecessary motion practice.

### C.      Huawei's Proposal

Huawei's proposal would limit a receiving party printing source code to 25 consecutive pages, or an aggregate total of 500 pages, without agreement by the producing party.  This Court has repeatedly entered these common sense 25- and 500-page limits in cases with many more accused products, and much more source code at issue, than this one.  The Court should follow this sensible practice rather than endorse CyWee's unbounded approach, which greatly increases the likelihood that counsel will disagree over whether various printouts are, in fact, "limited portions of source code" and "appear reasonably necessary" for use in this action.

Given the sensitive and highly confidential nature of source code, courts in this District have recognized the inherent risks of CyWee's "no limit" approach and instead imposed specific page restrictions on printouts to prevent inadvertent disclosure.  *Smartflash LLC v. Apple Inc.*, No. 13-447, 2014 WL 10986995, at *2 (E.D. Tex. May 12, 2014) ("allowing a party to print source code without restrictions would create a high risk of inadvertent disclosure"); *see also E– Contact Techs., LLC v. Apple, Inc.*, No. 11-426, 2012 WL 11924448, at *3-4 (E.D. Tex. June 19, 2012) (acknowledging defendants' strong interest in the confidentiality of their source code and reasoning that page limits provide "reasonable accountability for the review and printing of the source code").

CyWee's plan is admittedly vague; indeed, CyWee trumpets its vagueness as a feature. This view is incorrect.  Attorneys of good faith often hold different opinions about whether particular actions are "reasonable." Given the parties' different understandings of the source

code at issue in this action, it is likely that CyWee and Huawei will disagree here.  CyWee
acknowledges this likelihood, and even forecasts the likely dispute, noting that "if Huawei
believes that CyWee has printed excessive code, it is entitled to seek relief from the Court, and it
need not produce the printed code until its objection has been ruled on." The Court should not
ensure future dispute by adopting CyWee's unlimited standard, but instead impose reasonable
and specific page limits Huawei proposes.

CyWee argues that "Huawei's proposed limit is particularly onerous in a case such as
this, which involves math-intensive source code to calculate the orientation of a device for 11
asserted claims." *See supra.*  CyWee's infringement contentions, however, tell a different story.
For the four products at issue, CyWee submitted a total of 202 lines of Android Open Source
Project code, amounting to 24 total pages.  Thus, according to CyWee's own Rule 11
understanding of its case, this small amount of source code is sufficient to show infringement.
Although the accused devices will differ from the source code in the Android Open Source
Project, there is no reason to believe they will differ by more than an order of magnitude, which
is what would be required to exceed Huawei's common-sense limits.

For all these reasons, the Court should follow its practice in many other cases and impose
25– and 500-page limits.  *See, e.g., E–Contact Techs.,* 2012 WL 11924448, at *3-4 (court
adopted the defendant's proposed limit of 10 consecutive pages and 500 aggregate pages); *Seven
Networks, LLC v. Google LLC*, No. 17-442, Docket No. 88 (25 consecutive pages or 500 pages
in the aggregate); *GeoTag, Inc. v. Frontier Commc'ns Corp.*, No. 10-569, 2013 WL 12134192, at
*4 (E.D. Tex. Jan. 8, 2013) (35 consecutive pages or 500 pages in total).  CyWee objects to these
cases on the grounds that some of these plaintiffs agreed to these restrictions, but the Court
should not reward CyWee for its intransigence here.  Indeed, Huawei's proposal is especially

appropriate given CyWee's refusal to propose an alternative number, insisting instead on absolutely no limits. *Smartflash LLC v. Apple Inc.*, No. 13-447, 2014 WL 10986995, at *2 (E.D. Tex. May 12, 2014) ("Smartflash has offered no competing page limit proposal for printing source code. Given the highly sensitive nature of source code, there is good cause for some restrictions on printing").

## 2.     Transporting Source Code

### A.     Overview

Huawei would limit transportation of source code material to "hand carry." Ex. A at § 10(m). CyWee proposes that source code material should be allowed to be transported "via hand carry, Federal Express or other similarly reliable courier." Ex. B at § 10(m).

### B.     CyWee's Proposal

CyWee's proposed language is taken from the provisions of the Court's sample order. CyWee anticipates that it will retain expert witnesses in this case who reside outside the State of Texas. If Huawei's proposal is adopted, CyWee will be required to hire a courier service (at exorbitant cost) to drive or fly potentially hundreds of miles to deliver hard copies of source code documents to those experts. There is simply no reason why CyWee should be prohibited from using Federal Express or another reliable carrier to transport the documents, and this is consistent with the terms of the Court's sample protective order.

In support of its other arguments discussed herein, Huawei cites *Eolas Technologies, Inc. v. Amazon.com, Inc.*, No. 15-01038. In that case, the defendants similarly argued that source code material should be transported only via courier. In ruling on the issue, this Court held that "after the first delivery by [defendants] to an attorney office of [plaintiff's] choosing, the parties will split the cost of all other hand deliveries." *Id.* If the Court is inclined to agree with Huawei's arguments, CyWee submits that the Court should likewise include a cost-splitting provision in

this case, so as to minimize the potential for undue expense and abuse of the provision.

###### C.      Huawei's Proposal

Huawei's proposed § 10(m) of the Protective Order requires the receiving party to transport the producing party's source code printouts by hand carry.  This exact issue was in dispute in *Eolas Technologies, Inc. v.  Amazon.com, Inc.*, where this Court ruled in favor of requiring the parties to transport source code by hand carry.  No. 15-01038, Docket Nos. 81, 82, 98.  Huawei's proposal is consistent with the other agreed-upon provisions in the Protective Order, which requires that materials designated as "RESTRICTED CONFIDENTIAL SOURCE CODE" are stored or viewed at secure locations and only accessible to a limited number of approved counsel, outside consultants, and experts.  Furthermore, the parties have agreed that anyone cleared under § 10(e) may carry source code, along with anyone working "at the direction of" a person cleared under § 10(e).  *See* Ex. A, §§ 10(e), 10(m).

 CyWee's proposal, which provides for "Federal Express or other similarly reliable courier" to transport source code, would undermine these agreed-upon provisions in the Protective Order.  In fact, under CyWee's proposal, an unknown number of unauthorized persons could access the source code because a package sent by Federal Express standard shipping or a similar carrier changes hands multiple times before it reaches its destination.  These unknown individuals would not be cleared under § 10(e) and would not be working under § 10(m) "at the direction of" a person cleared under § 10(e) of the Protective Order.  And even with a tracking number, if the printed source code is lost in the mail, no one can confirm where it was sent or to whom.  This risk is too great.

CyWee submits two arguments for avoiding its responsibility to protect source code, but neither is persuasive.  First, CyWee "anticipates that it will retain expert witnesses in this case who reside outside the State of Texas."  That is CyWee's choice, of course, but it is no reason to

compromise the safety of Huawei's source code.  CyWee chose to bring suit in this District. Just because CyWee chooses to hire far-distant experts over the many available experts in Texas, Huawei should not be required to bear the increased risk. Second, CyWee argues that a "courier service" comes with an "exorbitant cost."  But in fact, CyWee submits *absolutely no evidence* to support this assertion, and the Court can dismiss it for this reason alone.  There are many courier services available, from companies large and small; some will be more expensive than others, but certainly CyWee has not begun to show that all of them are "exorbitant" either in isolation or compared to Federal Express and other overnight services.

### 3.    Acquisition Bar

#### A.    Overview

Huawei would prohibit any individual affiliated with CyWee who has viewed highly confidential information from being involved in the acquisition of patents in the field of invention for three years after conclusion of this lawsuit.  *See* Ex. A at § 12.  CyWee would omit this provision.

#### B.    CyWee's Proposal

CyWee has already agreed to the terms of the patent prosecution bar contained in the Court's sample protective order.[3]   That provision restricts any individuals associated with a party from performing work related to the prosecution of patents in the field of invention for a period of one year after conclusion of this lawsuit.  *See* Ex. B at § 11.  Huawei seeks to take this a step further by prohibiting any activities related to the acquisition of patents for a period of

---

[3] Huawei seems to argue that because CyWee has agreed to the terms of a patent prosecution bar, it should not be permitted to argue against the proposed "acquisition bar." CyWee only agreed to the prosecution bar in order to avoid dispute—CyWee recognizes that the bar is included in the Court's sample order and that a similar provision was included in the protective order in the *CyWee v. Samsung* case. CyWee does not concede that Huawei has met its burden to show a need for the onerous acquisition bar it seeks to add.

three years following conclusion of this lawsuit.  *See* Ex. A at § 12.  Huawei has provided little justification to CyWee for its insistence on such a provision—it has simply stated that individuals who receive Huawei's highly confidential information should not have the ability to use that information to assist clients in acquiring patents that might read on Huawei's systems.

Huawei's basis for its proposed restriction rests upon nothing more than pure speculation and conjecture. As the party seeking protection, Huawei bears the burden of proving good cause for such a provision, and for establishing that the scope of its proposed restriction is necessary and reasonable. *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). A showing of "good cause" requires the moving party to demonstrate that specific prejudice or harm will result if the protection is not issued. *See Rivera v. NIBCO, Inc.*, 384 F.3d 822, 826 (9th Cir. 2004). This requires a "particular factual demonstration of potential harm" that is threatened by the disclosure at issue. *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986).

Huawei's position is based entirely on empty speculation, not specific facts.[4]  Huawei has not shown any particular risk of harm that it will likely suffer absent inclusion of the acquisition bar it seeks, nor has it identified any "competitive decisionmakers" who will likely misuse Huawei's information in order to assist in the acquisition of patents. *Deutsche Bank*, 605 F.3d at 1378. Speculation, with no evidence whatsoever, that its confidential information will somehow be misused is insufficient—the facts supporting restrictions on discovery ***must be proven, not just alleged***. *Id.* at 1380. To the extent Huawei's hypothetical concerns have any merit, they are adequately protected by the general terms of CyWee's proposed Protective Order to which the

---

[4] Huawei points to unproven allegations in another case, pending in another jurisdiction, to support its speculation that there is a risk that individuals affiliated with CyWee will acquire patents in order to target Huawei in future litigation. *CyWee Group Ltd. v. HTC Corp.*, No. 17-932 (W.D. Wash. January 11, 2018). The allegations in that case have nothing to do with patent acquisition or Huawei.

10

parties have already agreed, which strictly limit the use of protected information. Among other things, any recipient of information under the Protective Order must agree to be bound by the order, and must submit to the jurisdiction of this Court for enforcement of the order. *See* Exhibit B at Appendix A.

The provision Huawei's seeks to impose is also improperly overbroad. For instance, the provision would apply to any activities related to the acquisition of patents in the "Field of Invention." *See* Ex. A at § 12. However, "Field of Invention" is undefined and subject to varying interpretations, which would likely lead to further unnecessary disputes. Additionally, the terms of Huawei's provision would be in effect for three years following termination of the litigation. In support of its proposal to include an acquisition bar, Huawei cites to this Court's ruling on a similar request in *Eolas Technologies, Inc. v. Amazon.com, Inc.*, No. 15-01038, Docket No. 82. In that case, although the Court allowed a similar provision, it specifically held that its terms "will be limited to the duration of the above-captioned case." *Id*. In the event the Court is inclined to allow Huawei's proposed restriction in this case, CyWee requests that it likewise be limited only to the duration of this lawsuit.

### B.    Huawei's Proposal

CyWee and Huawei agree that it is appropriate for the protective order to require that attorneys viewing "the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for one year after its conclusion, including any appeals."  Exs. A, B §  11.  Huawei seeks to add a provision further requiring that CyWee's counsel who view "HIGHLY SENSITIVE MATERIAL under this Order shall not be involved in any activity related to: the (i) the

11

acquisition of patents or patent applications relating to the field of invention[5] or (ii) the advising or counseling clients regarding the same." Ex. A, § 12. CyWee fails to explain how the first provision is reasonable and necessary, but the second amounts to pure speculation and a grave imposition on its freedoms.

And for good reason: they impose similar limitations for similar reasons. CyWee has agreed to a prosecution bar, and therefore, apparently agrees that "there could possibly be a risk of inadvertent disclosure of [Huawei's] confidential information in the course of representing their client before the PTO." *E-Contact Techs.*, 2012 WL 11924448, at *2. "There can be no question that a commensurate risk exists when these same attorneys advise their client in matters regarding the acquisition of patents." *Id.*

Huawei's acquisition bar will prevent CyWee's counsel from accessing Huawei's confidential information and using that information to advise clients on which patents to acquire for assertion against Huawei. This Court endorsed a nearly identical provision in *Eolas Technologies, Inc. v. Amazon.com, Inc.* No. 15-01038, Docket Nos. 81, 82, 98. This case also warrants an acquisition bar. It would be highly prejudicial to allow CyWee's counsel to access Huawei's confidential information and then use that information to guide its clients' acquisition of patents to assert against Huawei.

In balancing the interests of both parties, the enormous potential harm to Huawei outweighs the modest restriction an acquisition bar would place on CyWee's litigation counsel. *E-Contact Techs.*, 2012 WL 11924448, at *2 ("This Court finds that the potential harm of inadvertent disclosure outweighs the restriction imposed on counsel for Plaintiff. An acquisition

---

[5] The "field of the invention" that CyWee agreed to in § 11 is the same "field of invention" in § 12 that CyWee complains is "undefined and subject to varying interpretations."

bar should be included in the protective order."); *see also Unwired Planet LLC v. Apple Inc.*, No. 12-0505, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013) (finding that "good cause exists to include in the protective order the bar that Unwired's outside counsel cannot use the confidential information obtained in this lawsuit for the purpose of giving advice on patent acquisitions").

In addition, the particular circumstances of this case favor an acquisition bar.  In other litigation involving CyWee in the Western District of Washington, defendants HTC Corporation and HTC America, Inc. have brought third-party claims against CyWee Motion Group Ltd., which HTC asserts is "is affiliated with CyWee" and has "common and overlapping shareholders."  *CyWee Group Ltd. v. HTC Corp.*, No. 17-932 (W.D. Wash. January 11, 2018) (third-party complaint) para. 8.  In its third-party complaint, HTC alleges that CyWee Motion sold it "Sensor Fusion Hub technology" that CyWee now asserts infringes its patents—the same patents at issue here.  As part of these claims, HTC alleged that CyWee Motion committed unfair and deceptive business practices, specifically, that "CyWee Motion has not informed customers and potential customers of CyWee's Patents-in-Suit and the infringement risk by the Sensor Fusion Hub Software provided, taught, and/or required by CyWee Motion, despite having knowledge of the Patents-in-Suit, which CyWee claims to own."  *Id.* para. 57.  Although we cannot yet know the outcome of that litigation—CyWee Motion has yet to respond to the complaint—at a minimum CyWee's affiliate is accused by a reputable company of dubious behavior involving CyWee's patents.  Counsel for CyWee in this action has confirmed that they also represent CyWee Motion.  Under these circumstances, it is especially appropriate for the Court to order an acquisition bar to protect Huawei from any misuse of its confidential information.

Given the sensitivity of Huawei's confidential information, CyWee's agreement to a prosecution bar, and the circumstances specific to this case, Huawei respectfully requests that the bar remain in effect for three years after the case ends to ensure sufficient protection from inadvertent disclosure.

**4.     Source Code Excerpts**

**A.     Overview**

Huawei would allow the parties to include source code materials in documents for filing with the Court, but would prohibit them from including source code materials in documents exchanged between them, such as expert reports, correspondence, written discovery and infringement contentions, requiring them instead to cite by page and line number.  Ex. A, §§ 10(e), 10(f) and 10(i).  CyWee would allow the parties to include source code materials in such documents.  Ex. B, §§ 10(e), 10(f) and 10(i).

**B.     CyWee's Proposal**

Huawei has no basis for this restriction, particularly since it already agreed that source code materials may be included in documents that are filed with the Court. There should be no difference between documents filed with the Court and documents that are simply exchanged between counsel for the parties (such as expert reports, infringement contentions, and discovery documents). As a practical matter, it will be difficult if not impossible to provide the detail required in an expert report without the ability to include source code information within the report. The terms of the Court's sample order would allow the parties to include source code material in such documents, and that is what CyWee proposes here.

Huawei previously included provisions in earlier drafts of its proposed Protective Order (which were derived from the Court's sample order) that would allow use of source code material in documents exchanged between counsel. For instance, until the last minute before the

deadline to file this joint motion, § 10(e) of Huawei's proposed order recited that "[a] receiving

Party may include excerpts of Source Code Material in a pleading, exhibit, ***expert report,***

***discovery document***, deposition transcript, or other Court document, provided that the Source

Code Documents are appropriately marked under this Order . . . ." Huawei has since removed

that provision. Regardless, Huawei has no legitimate justification for refusing to allow the use of

source code material in documents exchanged between counsel.

    As an alternative, CyWee proposed that the parties could agree to exchange any materials

that include source code in a secure electronic manner, such as in password protected files (with

passwords sent via separate communication). Huawei rejected this proposal without explanation.

### C.    Huawei's Proposal

    Under Huawei's proposed § 10(f), "To the extent portions of Source Code Material are

quoted in an electronic copy or image of a document which, pursuant to the Court's rules,

procedures, or order, must be filed electronically ("Source Code Document"), either (1) the

entire Source Code Document will be stamped and treated as RESTRICTED CONFIDENTIAL

SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately

stamped and treated as RESTRICTED CONFIDENTIAL SOURCE CODE."  In other words,

excerpts of source code can be quoted only in electronic documents filed with the Court.  *See*

Ex. A, § 10(e) ("A receiving Party may include excerpts of Source Code Material in

documents filed with the Court").  For electronic documents exchanged between counsel, such as

correspondence, discovery responses, expert reports and contentions, the parties instead would

be required to cite to the production numbers of that source code excerpt.  *See* Ex. A, § 10(i)

("Images or copies of Source Code Material shall not be included in correspondence between the

parties (references to production numbers shall be used instead) and shall be omitted from

pleadings and other papers except to the extent permitted herein.")

Huawei's proposal is intended to minimize the risk of inadvertent disclosure of its highly confidential source code.  CyWee is wrong that "[t]here should be no difference between documents filed with the Court and documents that are simply exchanged between counsel for the parties"—every copy increases the risk of disclosure, Huawei cannot avoid a limited amount of disclosure in documents filed with the Court (precisely because they must be filed with the Court), but Huawei's acceptance of this limited disclosure does not require Huawei to accept all other disclosures.  Under CyWee's proposal, if any documents exchanged between counsel go wrong, such as through an unintended mistake like an incorrectly addressed email using autofill, the result will be disclosure of highly confidential source code.  Under CyWee's proposal, if that happens, because parties will cite to production numbers for source code in electronically served documents, then there would *not* be disclosure of highly confidential source code.  CyWee proposes to exchange any materials that include source code in password-protected files, but that would not reduce the number of copies of source code being created and disseminated, and would not prevent disclosure if the attorney sending email to the wrong address immediately replies all with the password—as inevitably occurs.

Finally, CyWee claim that "it will be difficult if not impossible to provide the detail required in an expert report without the ability to include source code information within the report.  This too is wrong.  CyWee's own infringement contentions cite to only 202 lines of Android Open Source Project code.  With such a limited amount of source code at issue, it would not be difficult for CyWee to cite to that code's production page numbers, whether it is in correspondence, discovery responses, expert reports or contentions.  If anything, because counsel and experts will have access to the source code, providing just page and line numbers will make drafting these documents *easier* by saving the effort of having to type out the code.

16

Dated: February 27, 2018                    Respectfully submitted,

/s/ *William D. Ellerman*
Michael W. Shore (Texas 18294915)
mshore@shorechan.com
Alfonso G. Chan (Texas 24012408)
achan@shorechan.com
Christopher Evans (Texas 24058901)
cevans@shorechan.com
Ari B. Rafilson (Texas 24060456)
arafilson@shorechan.com
William D. Ellerman (Texas 24007151)
wellerman@shorechan.com
Paul T. Beeler (Texas 24095432)
pbeeler@shorechan.com

SHORE CHAN DEPUMPO LLP
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone: (214) 593-9110
Facsimile: (214) 593-9111

**Counsel for CyWee Group Ltd.**


/s/ *J. Mark Mann*
J. Mark Mann (Texas 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas 24042033)
blake@themannfirm.com
MANN TINDEL THOMPSON
300 West Main
Henderson, TX 75652
Telephone : (903) 657-8540
Facsimile : (903) 657-6003

Kristopher L. Reed (CO 36991)
kreed@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta Steet, Suite 600
Denver, CO 80202
Telephone: (303) 571-4000
Facsimile: (303) 265-9618

Steven D. Moore (CA 290875)
Benjamin M. Kleinman-Green (CA 261846)
smoore@kilpatricktownsend.com

17

bkleinman-green@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone : (415) 576-0200
Facsimile : (415) 576-0300

Matthew S. Warren
Elaine Y. Chow
WARREN LEX LLP
2261 Market Street, Suite 606
San Francisco, CA 94114
17-495@cases.warrenlex.com

***Counsel for Defendants Huawei Device
Co., Ltd., Huawei Device (Dongguan) Co.,
Ltd., and Huawei Device USA, Inc.***

18