IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CYWEE GROUP LTD., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | |
| HUAWEI DEVICE CO. LTD., HUAWEI DEVICE (DONGGUAN) CO. LTD., and HUAWEI DEVICE USA, INC., | § § § § § | Case No. 2:17-CV-495-WCB |
| *Defendants*. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Huawei's Motion to Stay CyWee's Claims Against the Google Nexus 6P, Dkt. No. 77. The motion is GRANTED.

**BACKGROUND**

Plaintiff CyWee Group Ltd. ("CyWee"), owns U.S. Patent Nos. 8,441,438 ("the '438 patent") and 8,552,978 ("the '978 patent"), both of which are directed to three-dimensional pointing devices and associated methods for accurately transforming a device's movement into representations on a display. The claims of the two patents recite software algorithms that use signals from hardware sensors to produce the desired result, referred to as "sensor fusion" technology.

CyWee has asserted claims 1, 3, 4, 5, 14–17, and 19 of the '438 patent and claims 10 and 12 of the '978 patent against defendants Huawei Device Co, Ltd.; Huawei Device Dongguan Co. Ltd.; and Huawei Device USA, Inc. (collectively "Huawei"). Dkt. Nos. 1, 62. CyWee alleges that several products manufactured by Huawei—including the Huawei Mate 9, Huawei

1

MediaPad M2 10.0, Huawei Honor 8, Huawei Mate 10, Huawei Mate 10 Pro, Huawei Mate 10 Porsche, and Google Nexus 6P ("the accused products")—infringe the two patents at issue. Dkt. No. 62, ¶¶ 26, 162.  Representative claim 1 of the '438 patent recites:

> 1. A three-dimensional (3D) pointing device subject to movements and rotations in dynamic environments, comprising:
> a housing associated with said movements and rotations of the 3D pointing device in a spatial pointer reference frame;
> a printed circuit board (PCB) enclosed by the housing;
> a six-axis motion sensor module attached to the PCB, comprising a rotation sensor for detecting and generating a first signal set comprising angular velocities $\omega_x$, $\omega_y$, $\omega_z$ associated with said movements and rotations of the 3D pointing device in the spatial pointer reference frame, an accelerometer for detecting and generating a second signal set comprising axial accelerations Ax, Ay, Az associated with said movements and rotations of the 3D pointing device in the spatial pointer reference frame; and
> a processing and transmitting module, comprising a data transmitting unit electrically connected to the six-axis motion sensor module for transmitting said first and second signal sets thereof and a computing processor for receiving and calculating said first and second signal sets from the data transmitting unit, communicating with the six-axis motion sensor module to calculate a resulting deviation comprising resultant angles in said spatial pointer reference frame by utilizing a comparison to compare the first signal set with the second signal set whereby said resultant angles in the spatial pointer reference frame of the resulting deviation of the six-axis motion sensor module of the 3D pointing device are obtained under said dynamic environments, wherein the comparison utilized by the processing and transmitting module further comprises an update program to obtain an updated state based on a previous state associated with said first signal set and a measured state associated with said second signal set; wherein the measured state includes a measurement of said second angle set and a predicted measurement obtained based on the first signal set without using any derivatives of the first signal set.

Representative claim 10 of the '978 patent recites:

> 10. A method for compensating rotations of a 3D pointing device, comprising:
> generating an orientation output associated with an orientation of the 3D pointing device associated with three coordinate axes of a global reference frame associated with Earth;
> generating a first signal set comprising axial accelerations associated with movements and rotations of the 3D pointing device in the spatial reference frame;
> generating a second signal set associated with Earth's magnetism;
> generating the orientation output based on the first signal set, the second signal set and the rotation output or based on the first signal set and the second signal set;

> generating a rotation output associated with a rotation of the 3D pointing device associated with three coordinate axes of a spatial reference frame associated with the 3D pointing device; and
>
> using the orientation output and the rotation output to generate a transformed output associated with a fixed reference frame associated with a display device, wherein the orientation output and the rotation output is generated by a nine-axis motion sensor module; obtaining one or more resultant deviation including a plurality of deviation angles using a plurality of measured magnetisms Mx, My, Mz and a plurality of predicted magnetism Mx′, My′ and Mz′ for the second signal set.

CyWee alleges that each of the accused products contains the claimed structural hardware and runs a version of the Android operating system—an open-source platform developed by Google LLC—containing sensor fusion algorithms capable of practicing the claimed function and method steps of the claims. Dkt. No. 62, ¶¶ 38–147.

Ten months after initiating this action against Huawei, CyWee filed a separate action against Google in the United States District Court for the District of Delaware, alleging that four Google Pixel devices (each running a version of Android) infringe the '438 and '978 patents. *CyWee Grp. Ltd. v. Google LLC*, 1:18-CV-571, Dkt. No. 1 (D. Del. Apr. 16, 2018). Google answered and filed counterclaims including a counterclaim for a declaratory judgment that the Nexus 6P does not infringe the '438 and '978 patents. *CyWee v. Google*, Dkt. No. 12, ¶¶ 28-41 (D. Del. June 11, 2018). As part of its counterclaim, Google stated that "Huawei does not develop, maintain, or update the sensor algorithms on the Nexus 6P," and that the sensor "algorithms on the Nexus 6P are developed by Google." *CyWee v. Google*, Dkt. No. 12, ¶ 9. Thus, as things now stand, CyWee is presented with two opportunities to address whether the Nexus 6P infringes the '438 and '978 patents in two different venues and against two different parties.

Huawei subsequently filed a motion, opposed by CyWee, that this Court stay CyWee's claim that the Nexus 6P infringes the '438 and '978 patents in light of Google's pending counterclaim in the Delaware action. 2:17-CV-495, Dkt. Nos. 77, 81.

## DISCUSSION

The Court grants Huawei's motion to stay on the ground that the factors analyzed in considering a motion to stay weigh in Huawei's favor, and alternatively, on the ground that Huawei falls within the customer suit exception in this case.

### 1. The Standard Three-Factor Test

As a general rule, when two cases are filed in two different districts and the issues in the two cases substantially overlap, the first-filed action has priority. *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006); *Lodsys, LLC v. Brother Int'l Corp.*, No. 2:11-CV-90, 2013 WL 1338767, at *11 (E.D. Tex. Jan. 14, 2013); *see Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir. 1997) (noting that the first-filed rule does not require that the cases or parties be identical, as long as the substantive issues substantially overlap). In the Fifth Circuit, "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power*, 121 F.3d at 950. This rule is "grounded in principles of comity and sound judicial administration" *id.*, and is intended "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 729 (5th Cir. 1985).

When faced with a motion to stay litigation of an issue in the first-filed case, this Court considers: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the

nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). Huawei has shown that, on balance, those factors weigh in favor of a stay.

As to the first factor—whether a stay will prejudice the nonmoving party—Huawei has shown that CyWee will not be significantly prejudiced in a way that warrants denying the motion. As Huawei notes, CyWee chose the forums in which to file both actions, and selected the District of Delaware as its preferred forum for the second action, so it has no ground to complain of forum shopping. Dkt. No. 77, at 8-9. The only prejudice CyWee alleges it would suffer from the stay is that the Delaware action is likely to take "considerably longer to resolve than the instant case." Dkt. No. 81, at 7. As evidence, CyWee cites the fact that the Delaware action was initiated ten months after the present action, and that the District of Delaware has a median time to trial that is approximately seven months longer than the median time to trial in this district. *Id.* at 7–8.

CyWee is correct that a plaintiff's interest in the prompt enforcement of its patent rights is entitled to weight, but the interest in timely enforcement is "present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015). While this factor weighs somewhat in CyWee's favor, the Court concludes that in this case the other factors outweigh any potential prejudice resulting from a delay in enforcing CyWee's patent rights.

As to the second factor—whether a stay will simplify the issues in this case—Huawei has demonstrated that it will. Huawei alleges that the "case in Delaware will fully resolve the core

5

issue of whether the Google Nexus 6P infringes each asserted claim." Dkt. No. 77, at 9. Furthermore, it appears that a stay would obviate the need for non-party discovery from Google. In addition, granting the motion for a stay would simplify this case by avoiding the burden of requiring the jury to consider infringement by a device containing software that is different from the software in the other six accused Huawei-branded products. *Id.* CyWee responds that a stay would fracture litigation, complicating matters and wasting judicial resources, Dkt. No. 81, at 8, but it has failed to provide factual support for those assertions.

The Court notes that some of the asserted claims recite particular structure (such as sensors and processors), but all of the asserted claims contain function or method steps associated with software. '438 patent, claims 1, 3, 4, 6, 14–17, and 19; '978 patent, claims 10 and 12. The software-associated function and method steps are central to the infringement inquiry in this case: the asserted claims require specific signal generation, calculation, comparison, and output, or hardware capable of performing those functions. *Id.* Huawei asserts that it has the information necessary to answer the infringement question as to the six accused Huawei-branded products, as it developed both the hardware and sensor fusion algorithms for those devices. *See* Jia Zeng Decl., Dkt. No. 77-2 (stating that the accused Huawei-branded products contain Huawei-engineered sensor fusion algorithms that are not part of the open-source version of Android). But Huawei states that it does not have the information necessary to defend against the infringement claims as to the Nexus 6P. Huawei has provided a statement from Google that Huawei does not possess the information necessary to address the infringement charges as to the Nexus 6P, as it was Google that developed the sensor fusion algorithms for that device. *See CyWee v. Google*, Dkt. No. 12, ¶ 9 ("Huawei does not develop, maintain, or update the sensor algorithms on the Nexus

6P," and the sensor "algorithms on the Nexus 6P are developed by Google."). CyWee has offered nothing to rebut either assertion.

Importantly, Huawei has agreed to be bound by the infringement determination in the Delaware action. Dkt. No. 82, at 3. Therefore, once the Delaware action is resolved, there presumably will be nothing left for this Court to adjudicate as to whether the Nexus 6P infringes the '438 and '978 patents.[1] Huawei has thus shown that granting the motion to stay would simplify the issues in this case, without adding to the burden on the court in the Delaware case. This factor thus weighs heavily in Huawei's favor.

The third factor—whether discovery is complete and a trial date has been set—also weighs in Huawei's favor. As Huawei points out, discovery in this case is not complete, and following a request for additional time for discovery, Dkt. No. 70, the Court entered an amended docket control order that did not set a date for trial. Dkt. No. 74. In fact, Huawei reports that discovery relating to the Nexus 6P has not even begun. Dkt. No. 77, at 10. CyWee argues that this case has "progressed significantly from its filing date: The DCO has issued, initial disclosures have been served, interrogatories have been responded to and documents have been produced, and CyWee has filed its opening claim construction brief. Further, the parties are scheduled for pretrial conference by May 2, 2019." Dkt. No. 81, at 7. But the steps that have already been taken are all preliminary steps taken early in the litigation. In any event, just because litigation has advanced to some extent since the filing of the complaint does not mean it

---

[1] CyWee argues that Huawei's agreement to be bound does not simplify the issues in this case, because Huawei can still challenge the validity of the '438 and '978 patents. The Court disagrees. The '438 and '978 patents are being asserted against all of the accused devices; the validity of the '438 and '978 patents will be raised in this case (and, presumably, in the Delaware action) regardless of whether the issue of the Nexus 6P infringement remains in this case. The evidence of invalidity of the two asserted patents, moreover, is likely to be entirely separate from the evidence of infringement by the Nexus 6P.

has progressed so far as to preclude a stay. *See NFC Tech.*, 2015 WL 1069111, at *3, *8 (granting a motion to stay even though "the parties had engaged in significant discovery, and claim construction briefing was complete"). In sum, the third factor weighs at least slightly in Huawei's favor.

After weighing all of the factors that bear on whether to grant a stay, the Court concludes that the balance of the factors favors Huawei. Accordingly, in the exercise of its discretion, this Court will grant Huawei's motion to stay as to the question of whether the Nexus 6P infringes the '438 and '978 patents, pending completion of the Delaware action.

**2. The Customer Suit Exception**

Huawei also asserts that this Court should grant the motion to stay because the customer suit exception applies in this case. Dkt. No. 77, at 5–8. The customer suit exception is an exception to the general rule that favors the forum of the first-filed action; it provides that where a manufacturer and its customer have both been sued, the action against the manufacturer should ordinarily proceed first, regardless of which action was first filed. The customer suit exception "is based on the manufacturer's presumed greater interest [than its customers] in defending its actions against charges of patent infringement; and to guard against possibility of abuse." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989)). The guiding principles underlying the doctrine are efficiency and judicial economy. *Tegic Commc'ns Corp.*, 458 F.3d at 1343. In that regard, a critical question under the customer suit exception "is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, No. 2:13-CV-909, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015) (internal quotation omitted).

8

In determining whether the customer suit exception applies, the court analyzes three factors: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *Id.* (citing *Tegic Commmc'ns Corp.*, 458 F.3d at 1333). However, "the Court does not apply the factors in a mechanical or precise manner and instead adopts a flexible approach in order to assess whether judicial resources will be saved." *Id.* (internal quotations omitted).

Huawei argues that the customer suit exception applies in this case because, as an original design manufacturer ("ODM"), Huawei merely built the Nexus 6P on behalf of Google. Dkt. No. 77, at 3. And Google, Huawei explains, created the Nexus 6P's sensor fusion algorithms, whose functionality is at the center of the infringement inquiry. Dkt. No. 77, at 6. As a result, Huawei contends, Google should be considered the manufacturer of the Nexus 6P, and Huawei should be considered a customer for purposes of the customer suit exception. *Id.*

CyWee counters that Huawei is the only real manufacturer of the Nexus 6P and cannot be considered a customer or "mere reseller." Dkt. No. 81, at 5–6. CyWee further argues that the asserted claims cover the entire Nexus 6P device, not just the sensor fusion algorithms developed by Google. *Id.*

The Federal Circuit has previously addressed a fact pattern similar to the facts of the present case. In *In re Google*, 588 Fed. App'x 988 (Fed. Cir. 2014), a patentee brought a series patent infringement suits in the Eastern District of Texas against several device manufacturers who had installed a version of the Android operating system on their devices. The patentee alleged that its patents covered aspects of the Android system. *Id.* at 989. Google, as the

9

proprietor of the Android operating system, filed suit in the Northern District of California seeking a declaratory judgment that the Android operating system did not infringe the same patents that were asserted against the manufacturers in the Texas actions. *Id.* The device manufacturers then sought to stay the Texas actions pending resolution of Google's suit in California, *id.*, but the district court denied the motions. *See, e.g., Rockstar Consortium U.S. LP v. ASUStek Computer, Inc.,* No. 2:13–cv–894, 2014 WL 3735831, at *4–5 (E.D.Tex. Jul. 28, 2014). The manufacturers then sought a writ of mandamus to require the district court to stay the proceedings pending the outcome of the declaratory judgment suit in the Northern District of California.

The Federal Circuit issued the writ. After noting the substantial similarity between the competing actions, the court rejected the contention that a device manufacturer's hypothetical ability to customize the Android platform placed such suits outside the usual customer-suit exception. The court also rejected the respondent's argument that the manufacturers of Android devices could not be considered "mere resellers" of the Android software. 588 F. App'x at 990. The court concluded that the stay should have been granted, leaving it to the district court in the Northern District of California to address the issue of patent infringement in the action brought by Google. *Id.* at 992.

Even though *In re Google* was a non-precedential order, the Federal Circuit's analysis in that case is both persuasive and indicative of how the Federal Circuit is likely to view such an issue in the future. In this case, as in *Google*, the issue on which Huawei seeks a stay substantially overlaps with the parallel issue in the Delaware action, and the Federal Circuit's reasoning in that case is equally applicable here.

Beyond that, Huawei contends that, as an ODM, it received the sensor fusion algorithms from Google—without which the alleged infringement by the Nexus 6P would not be possible—and loaded the algorithms onto the Nexus 6P at the direction of Google. *CyWee v. Google*, Dkt. No. 12 ¶ 9; Dkt. No. 77, at 3, 6. Huawei's relationship with Google and the actions taken by each party thus appear to render Huawei a "mere reseller" for the purposes of the customer suit exception.

Finally, Huawei has formally agreed to be bound any infringement determination in the Delaware action, Dkt. No. 82, at 3, and neither party has asserted that there are any other sources of the infringing product other than through the combined efforts of Google and Huawei. The Court therefore concludes that the rationale of the customer suit exception applies to a case such as this one, in which a device manufacturer installs software central to an infringement inquiry made by a third party. On that ground as well, the Court considers that a stay is warranted. Accordingly, Huawei's motion to stay CyWee's claims against the Google Nexus 6P is GRANTED.

IT IS SO ORDERED.

SIGNED this 22nd day of August, 2018.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE